Page 622-1824 Qualcomm v. Intel How do I say your name? Good morning, Sasha Mergoys on behalf of Qualcomm Mr. Mergoys, please proceed May it please the Court, Failing to apply the lessons from this Court's decision in DSS, the Board committed the same errors here that led to a reversal in DSS. As in DSS, the Board improperly relied on ordinary creativity as a wholesale substitute for reasoned analysis and evidence-based fact findings. As in DSS, which also involved base station and mobile device technologies, the Board's basis for determining obviousness centers on one paragraph. That paragraph includes a few sentences identifying various legal principles followed by a summation sentence that states, Thus, a person of ordinary creativity would have made any necessary modifications. That sweeping generalization cannot be sufficient. Entirely absent from the Board's decision are any findings about what those modifications would be, how skilled artisans would make any of these unidentified modifications, or whether there would be any reasonable expectation of success in making these unidentified modifications. So are you talking about the power amplifier? What are you talking about? What modifications are you precisely referring to? Well, that's the issue, Your Honor. In page 50 of the final written decision, the Board says, Make any necessary modifications. It never explains what those modifications are, how they would work, or how they would be implemented. I guess I'm not understanding. Obviousness, are you challenging right now motivation to combine? Are you challenging whether underlying elements have been established to be present? What is the basis or nature of your precise argument? Two bases. First, there's a failure to explain and there's no evidence to support a reason to modify a mobile device with base station technology. Even if there were a reason to do so, the Board failed to explain what that modification would be. Well, the problem is that the prior reference expressly says the power amplifier can be used for either, right? It can be used either in a base station or in a cell phone. Now, granted, a power amplifier for a base station is not going to fit in a handheld device. No question, right? You don't even need to be particularly technical to understand that. But nonetheless, the reference says it could, which would suggest that an ordinarily skilled artisan would know how to do that. So what is the problem? Well, Your Honor, the power amplifier is just one limitation in the claims. There's other limitations in the claims that both Intel and the Board relied on, which did not involve the power amplifier. For example, Figures 3 and 4 contain various circuitry and configurations to control the power amplifier. That is what Intel relied on. It did not rely on Figure 2 to control the power amplifier. The problem is the Board never found that Figures 3 and 4 were limited to base stations. Right. The Board actually assumed they were base stations. They didn't find they were limited to. So what you disclosed is cell phones and base stations, and the Board didn't find that Figures 3 and 4 were limited to base stations, which means theoretically what's disclosed in Figures 3 and 4 would equally apply to cell phones. But there's no finding on that by the Board. The Board didn't find. If that was the Board's reasoning and basis, it should have found. It expressly found that it says we are not finding Figures 3 and 4 limited to base stations. Correct. But there's still no evidence that anything in Figure 3 or 4 would apply to a mobile device. The Board can't avoid making a finding by assuming something is not limited to a base station. There still had to be some analysis and reasoning why Figure 3 and 4 would apply and would work in a mobile device, and that's entirely absent from the record or the Board's findings. In fact, the only evidence here is one-sided, and it comes from Dr. Williams who explained why Figures 3 and 4 are base stations, not mobile devices. As Your Honor noted, there's a difference in size, there's a difference in frequency spacing, and there's also power constraint differences, and that's paragraphs 64 to 68 of Dr. Williams. And so is your problem that the Board – I agree, I read Dr. Williams' testimony, and it's quite strong, and if the Board had adopted it, I probably would have affirmed without any difficulty. Is your problem that they didn't adequately explain why they were rejecting Williams' testimony? Certainly, that is part of the problem, and that is subsumed by the fact they didn't provide – the Board didn't provide any explanation. The Board simply said any necessary modifications. There was no evidence to support that in the record. They definitely didn't engage with what Dr. Williams said, but I mean, they're not necessarily required to. Their opinion is sort of complete on its own. They don't have to address each piece of evidence. They do not, but they still – the Board is still obligated to provide fact findings, evidence-based fact findings and reasonings for its determination. That is wholly absent here. An assumption is not a fact finding, certainly when there's no evidence cited to support that assumption or the inverse of that assumption. And as this Court importantly made clear in DSS, similarities in transmission hardware are not enough to fill evidentiary gaps when there's no evidence – when there's no reasons to support that – when there's no reasoned analysis. Here, there is no reasoned analysis, but there are evidentiary gaps. This Court would not – this Court's precedent makes clear that an expert who would say – provide a conclusory statement such as make any necessary modifications, that would be too conclusory and undeveloped to support finding. So, too, when the Board relies on such a sweeping generalization, that does not fulfill its obligation of providing fact findings and evidence and explanation to support an obviousness determination. And as I mentioned earlier, there's also no evidence to support the Board's conclusion that skilled artisans would have modified a mobile device technology or face station technology. Again, Intel did not offer any evidence or expert testimony on this. The most that Intel offered was a footnote in its petition, footnote four – I'm sorry, footnote six, where it said it would have been obvious to Posita to take advantage of Yu's invention in a mobile device. Intel's expert did no more than that. He repeated that same footnote verbatim. There's simply no evidence as a matter of law to support a finding or reasoned explanation why skilled artisans would have modified a mobile device or face station technology, especially when there's no dispute that figure two is a mobile device. There should have been some reasoning and explanation why a skilled artisan would have taken technology from figure three and four and applied it to figure two. Why? Why does there have to be a reason given when the reference itself expressly says the power amp can be utilized in both? If the reference tells you – see, this is, with all due respect, some of the easier obviousness cases because this isn't even multiple references. This is like combining figure two with figure three and four of the same reference. That's pretty straightforward. And this reference expressly says the power amp of the mobile base station could also be used for a mobile phone. Why do you need a why do it when the reference expressly suggests it can be done? Because the word a why comes in as – Intel and the board in the first final written decision doesn't just rely on the power amplifier, hard stop. It relies on other circuitry in figures three and four that are not in figure two. And there has to be a reason why someone would take the circuitry in figures three and four and apply it to figure two. The power amplifier is controlled by different configurations in different embodiments. For instance, the first limitation in claim one recites a power tracker and then a single power signal based on the I and Q components. Intel only relied on figures three and four to meet that limitation. Intel never relied on figure two. And it's a little bit of a paradox for you, right? You have anticipation.  And the scale of – the person's scale of ordinary scale is very relevant here. It is, but even so there has to be some reasoned explanation why a person of ordinary scale in the Art would then take the control circuitry such as components one and four and one and six. We're picking the board's opinion. I don't think so, Your Honor. What we're demanding from the board is some reasoned analysis and fact findings for why any modifications would be made and what those modifications are. All we have from the board is any skilled artisan who makes the meaningful modifications. If the board had expressly said that figures three and four of you extend to mobile devices, you would concede that's the end of this? There is substantial evidence? There would still – I'm sorry. If figures three and four –  You complained earlier, if I understood it correctly, that the board simply made an assumption that three and four are not limited to base stations. So I'm asking if they had gone the half sentence further that you seem to think they needed to do and said not only are they not limited, they do extend to mobile devices. Is that the end of the appeal? No, Your Honor, because what would be required is some explanation and evidence as to why figures three and four would be mobile devices. On your record, Dr. Williams is the only expert who addressed that issue and explained for numerous reasons why figures three and four would not be mobile devices. Do you want to save the remainder of your time for rebuttal? Yes, please. Thank you very much, Your Honor. Please proceed. Good morning, Your Honor. May it please the Court, Qualcomm's appeal presents a straightforward substantial evidence question, and on the one finding on which they have appealed, the board found that, quote, it would have been obvious to a person of ordinary skill in the art to take advantage of used invention in a mobile device. Used invention, period.    Not figure four, not figure three. Used invention, the power amplifier. And the board made that finding because of two express disclosures in you, either one of which provides substantial evidence for it. First, as the Court has recognized in questioning, you said specifically in paragraph 34 that its power amplifier, quote, may, e.g., be employed in wireless communication systems such as base stations of cellular communication networks or wireless transceivers of mobile device, of mobile terminals and the like. That's an express disclosure to do exactly what the board said it would be obvious to do, to use the power amplifier of you in a mobile device, and it's more than sufficient to provide substantial evidence that a person of ordinary skill would have had a reason to use power amplifier in a mobile device. You told them to do it. And the second express disclosure is figure two of you, which the board found and which Qualcomm expressly admitted, quote, discloses a mobile terminal appropriate system for controlling supply voltage and power amplifier. So you says you can use our power amplifier, which power amplifier is disclosed in figure one, figure two, figure three, figure four. You can use that in a mobile device. And figure two provides an example that everybody agrees is indeed a mobile device. Now we, of course, disputed in front of the board and continue to contend that figures three and four are also agnostic and could be used in a mobile device. The board did not make a finding one way or the other because it didn't need to because it concluded on an obviousness combination that it was a straightforward combination to make where you had expressly said to make it. None of Qualcomm's arguments to the contrary undermine this. They rely on DSS, and DSS does indeed say that it is inappropriate to supply a missing limitation using ordinary creativity. But what the board did was not supply any missing limitation. There was no missing limitation that the board supplied. What Qualcomm actually says is telling, if you look at their yellow brief at page 21, they say, quote, the missing limitation is whether it would have been obvious to modify U to achieve a plurality of carrier aggregated transmit signals that requires increasing the bandwidth for a user. That's not a limitation. That's whether it would have been obvious to modify. Nothing in DSS and nothing in this court's precedent says. What about Dr. Williams? Dr. Williams does indeed provide evidence in which he argues that there would be reasons not to make that modification. And again, if this were... Is he an expert? Say again. I'm sorry. He's an expert, right? He is. He's a pining. Yes, correct. He is a pining that it would not have been obvious to make that modification. I went through and explained in detail at least three reasons why, and where did the board address those? The board, number one, addressed that it acknowledged that Dr. Williams had offered an opinion, and it addressed the merits of Dr. Williams' analysis in its discussion specifically of frequency spacing. What page? Tell me what page of the JA it would be. And it is not citing Dr. Williams here, just to be 100% clear. What it was doing was citing the arguments that Qualcomm made based on Dr. Williams. It is on appendix page 50, citing patent notice response at pages 23 to 24. And in that appendix, page 50, it addresses the frequency spacing argument. And what it says is that on the merits that frequency spacings, that U says that you can use different frequency spacings. It cites appendix page 2475, which is U paragraph 72. U paragraph 72 says, quote, the application of the inventive principle advantageously enables. Are we talking about JA 50? I'm just trying to find where you're reading from. Yes, Joan, I believe so. Join appendix page 50. Let me make sure I've got the right site. It is, yeah, so it's page 50. The last paragraph at appendix page 50, they say, we note patent owner's contention that the base station implementations are not appropriate for use in mobile terminals. And that's patent owner's response, page 23. And they cite page 23 to 24 of that response. That's the part of their brief in front of the board where they address and make Dr. Williams' argument. They make the same argument that Dr. Williams makes. And the board addresses it by saying we're not dealing with bodily incorporation here. The test is whether the combined teachings would be sufficient. And that's supported by the fact that when you're dealing with the concepts, not bodily incorporation, we have patent owner's own admission that, quote, figure two of U discloses a mobile terminal appropriate system. And then they go on. They go on to then further say that to address the downlink carrier aggregation point that Dr. Williams made, they do that on page 51. So I agree that the board did not cite Dr. Williams when addressing Qualcomm's arguments based on Dr. Williams' analysis. But there's no question that the board acknowledged that Dr. Williams had provided an expert opinion. And there's no question that the board addressed the merits of that opinion in the substance of its argument. You skipped over at the bottom of page 50 the sentence that a person of any skill or merit would have made any necessary modifications without telling us what those modifications are. How can we review such a conclusory statement as to what a person of skill or merit would do? I think, Your Honor, that that you're correct, Your Honor, that sentence doesn't say specifically what the modifications would have been. The reason this case is unique in that regard, why that is not an issue in this case where it could theoretically be in others, is that we're not dealing with combining two separate references and we're not dealing with a circumstance in which there was not an express statement describing the motivation to combine. You, paragraph 34, specifically says you can use this invention in mobile terminals. So there is an express statement in the invention, saying that one should do this. Then there's a disclosure, figure 2 of you, that shows one example showing that at least the patent owner knew that it was possible to use this power amplifier in mobile devices. And the combination of those things here, all in a single reference, there's nothing else for the board to find. There's no specific additional finding that the board would need to make where the reference itself describes the reason for combination. In fact, I would submit, Your Honor, that even under the old TSM test, this would have been sufficient. It's an express teaching in the reference itself to do the thing that the board found that it was obvious to do. That's why that sentence that the board stated that a person of ordinary skill would have made any necessary modifications is just fine in this context. We would submit that substantial evidence is the easiest way to resolve this appeal. We do have a conditional cross appeal, or technically speaking, a conditional separate appeal based on the Chen reference, and there the issue is one of claim construction and whether the broadest reasonable interpretation standard was correctly applied. The fundamental issue on both the claim construction alternative basis for the appeal and the issue in the conditional cross appeal is whether the broadest reasonable interpretation of plurality of carrier aggregated transmit signals should or should not include the additional requirement of increasing the bandwidth for a user. We respectfully submit that the board got it right the first time when they said that the broadest reasonable interpretation did not require that, that it was reasonable to construe it without that additional limitation. We think fundamentally where the board went astray was the board saw in the prosecution history, correctly, that the patent owner had amended the claim and had amended the claim by changing different to carrier aggregated and it felt that it needed to give some meaning to carrier aggregated in the phrase carrier aggregated transmit signals, and we don't disagree that that's correct. The board should be giving some meaning to carrier aggregated. Respectfully, the board erred by not looking to the specifications description of what carrier aggregated meant. Qualcomm itself had explained what carrier aggregated meant and where it had given that explanation, it would have been appropriate to adopt that explanation not to adopt a different and narrower construction, especially under the broadest reasonable interpretation standard. Unless the court has further questions, I'm happy to reserve the remainder of my time. Thank you. Thank you. Just a few quick points, Your Honors. First, to the extent Intel or the board is relying on Figure 2, that is procedurally improper and substantively deficient. Intel never relied on Figure 2 in its petition. Its expert never cited Figure 2. It relied on Figures 3 and 4. As this court explains in Magnum Oils, the board cannot raise, address, and decide an invalidity theory that a petitioner does not raise and provide evidence for. Second, on DSS. Didn't Intel rely on Paragraph 34? It did, Your Honor, on Paragraph 34. Paragraph 34 says that power amp and the word ball has antecedent basis and the antecedent basis is Figures 2 to 4 and it says so expressly. So two points on that, Your Honor. Intel's only evidence on Figure, I'm sorry, on Paragraph 34 was a footnote in its petition and a footnote in its expert declaration. In any event, even if the power amplifier is the same in Figures 2, 3, and 4, that still does not provide any reasoning or motivation to take the control circuitry in Figures 3 and 4 and apply it to Figure 2 and it is the control circuitry in Figures 3 and 4, in particular Components 104 and 106, that Intel and the board rely on for various limitations in the claims. On DSS, the key in DSS is not that it was missing a limitation. It's not that the limitation was missing. What was decisive in DSS is that reasoning and fact-finding were missing. And again, I think DSS is instructive here because that case makes clear that even if there's a similarity in transmission hardware, that does not fill evidentiary gaps without reasoned analysis. There's no reasoned analysis here. The board did not provide any and Intel cannot point to any. Unless there are any questions, I will give it back to the Court of Time. Okay, and since you didn't address the cost appeal, you have no rebuttal. Thank both parties. This case is taken under submission.